IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENISE TAYLOR, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>EXXON MOBIL CORP., STATION )<br>OPERATORS, INC. dba Exxon Mobil )<br>CORS and AZHAR SIDDIQUI, )<br>    Defendants. )<br>_____) | Judge Blanche M. Manning<br><br>Case No. 07 C 3172 |

**MEMORANDUM AND ORDER**

Plaintiff Denise Taylor brings suit against defendants Exxon Mobil Corporation, Station Operators, Inc., and Azhar Siddiqui, for employment discrimination. Taylor alleges that the defendants subjected her to a hostile work environment because of her race. Defendants Exxon Mobil and Station Operators, Inc. have moved for summary judgment. For the reasons provided below, the motion is granted. Any references in this memorandum and order to "defendants" refers to Exxon Mobil Corporation and Station Operators, Inc. unless otherwise indicated.

**I.     Facts**

Denise Taylor is a black woman and a former employee of defendant SOI, which is a wholly-owned subsidiary of defendant Exxon Mobil. Taylor began working as a sales associate for SOI on or about December 8, 2003, at a service station in Wheeling, Illinois. Taylor was hired to work part-time but changed from part-time to full-time status in September 2004. In May 2004, Azhar Siddiqui became the store manager for the Wheeling service station where Taylor worked. Siddiqui offered to promote Taylor to the position of assistant store manager on

several occasions, but Taylor declined.

According to the defendants, in February 2005, Taylor received a verbal warning, documented in writing (*see* Exh. 14 to Taylor's deposition, Defendants' Exhibits, Vol. 3 at 101), for clocking in before the start of her shift and clocking out late at the end of her shift without her manager's permission. The document contains a handwritten note at the bottom stating "refused to accept" and Taylor testified at her deposition that she did not recall receiving such a warning.

On or about April 21, 2005, Taylor and Siddiqui had a disagreement about Taylor's schedule. According to Taylor, Siddiqui had changed her hours and was requiring Taylor to work at a time when she had already planned to visit her father in the hospital. Taylor, upset about the schedule change and Siddiqui's refusal to accommodate her own schedule, started to cry and told Siddiqui that she needed to leave the store to "get some air." Siddiqui treated her departure as though she had quit. Indeed, when Taylor reported for work the next day, April 22, 2005, her co-workers told her that Siddiqui said she had quit, though Siddiqui was not at the store on that day. According to Taylor, one of the other employees, Courtney Leipis, called Siddiqui who told Leipis that Taylor had to write a "statement" before she would be allowed to get her job back. The statement, hand written by Taylor, states:

> I [sic] Denise, walked out on 4-21-05, not realizing that Azhar thought that this meant I was quitting. But I apologized about my behavior and [sic] that I am sorry that this may have upset him or anyone else. I had needed to leave because I was very upset, I didn't know if I left I was giving up my job. But I do realize this now. I will not let this happen again.

The statement is signed "Denise Taylor, 4-22-05" and includes other employees' signatures underneath Taylor's. In her deposition, Taylor testified that the statement was false, that she did nothing wrong, and that she only signed the statement in order to regain her job.

The last day that Taylor performed work at the Wheeling service station was May 25, 2005. Taylor was in the process of signing off of her register at the end of her shift when she was approached by assistant store manager Courtney Leipis. According to Taylor, Leipis approached her and kept telling her to "hurry up" and to clock out. After Taylor finished with her register, she went to the back office to talk with Leipis about what Leipis had said to her. Taylor told Leipis, "I never disrespect you. Why would you do that to me."

While Taylor and Leipis were talking, Siddiqui approached them and Taylor told Siddiqui what had happened between her and Leipis. Siddiqui told Taylor that she needed to change her ways and that he was sick of her. Taylor responded by telling Siddiqui that since she could not talk to him, she was going to talk to Carlos Corniffe, the territory manager. According to Taylor, Siddiqui replied that she was being insubordinate and that she was to give him her keys to the store, because she was fired. Taylor gave Siddiqui her keys, and then left the service station and went home.

Upon arriving at home, Taylor phoned Corniffe, whom she testified is African-American, and told him what had happened between her and Siddiqui. Corniffe told Taylor that Siddiqui did not have the authority to fire her and that Siddiqui would have to consult with him before firing her. Corniffe also told Taylor that he was going to schedule a meeting with her and Siddiqui to discuss what had happened. After talking with Corniffe, Taylor received a phone message from Siddiqui stating that there was going to be a meeting between the three of them after the Memorial Day holiday weekend.

Taylor never attended the meeting with Corniffe and Siddiqui because her family members told her she didn't have to. Taylor also states in her response that she did not attend the meeting

because: (1) she felt that she would not have been hired back anyway, (2) they would have "double-teamed" her without allowing her the opportunity to defend herself, (3) Siddiqui had sent the police to her home on a false charge against her son, and (4) she had suffered such a loss of dignity and suffered so much stress that even if Corniffe had re-hired her she would not have been able to return to work.

Taylor never returned to work at SOI thereafter. She has been employed by BP Amoco at its retail location in Wheeling, Illinois from May 2005 to the present. Taylor seeks no damages for back pay or lost benefits in this action.

The court notes that Taylor alleges that after becoming store manager, Siddiqui "undertook a plan to terminate the employment of all black employees working at the Wheeling facility and replace them with non-black employees." Specifically, Taylor identified the following black employees as having been fired from the Wheeling service station by Siddiqui: Sandra Brown, Robin Beasley, Joe Meadows and Tarleace Beard. The court addresses specific facts related to these individuals as relevant in the text of this order. Moreover, other relevant facts are discussed as necessary in the analysis section of this order.

## II. Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). The court construes all the facts and the reasonable inferences drawn from those facts in favor of the non-movant. *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not merely rest upon the allegations or details in her pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322.

**III.    Analysis**

    A.    What claims is Taylor alleging?

In her amended complaint, Taylor alleges two counts: Count I is styled as a "race discrimination" claim against ExxonMobil Corporation and SOI under Title VII while Count II is styled as a hostile work environment claim under 42 U.S.C. § 1981 against all three defendants.

In their motion for summary judgment, the defendants argue that Taylor cannot establish a *prima facie* case of race discrimination. In her response, Taylor denies that she is alleging a disparate treatment claim under Title VII. Rather, she states that "[t]he Amended Complaint alleges that these firings [of SOI's black employees] created a hostile work environment violating both Title VII of the Civil Rights Act of 1964 (Count I) and Section 1981 of [the] Civil Rights Act of 1868", which is presumably Count II. Taylor seems to be playing fast and loose with the court. Count I is styled "race discrimination" and makes absolutely no mention of a purported hostile work environment claim. Instead, Count I alleges that "[b]y terminating plaintiff's employment defendants, Exxon, [sic] and SOI have willfully and intentionally discriminated against plaintiff on the basis of her race." Amended Comp. at ¶ 18.

In contrast, Count II is specifically styled as one based on the "creation of [a] hostile work environment" and expressly alleges that "[p]laintiff was subject to the unwelcome harassment described above", "[t]he harassment plaintiff suffered was based on his [sic] race", and "[t]he

harassment described above was severe and pervasive so as to have altered the conditions of the employee's environment and to have created a hostile and/or abusive working environment." *Id*. at ¶¶22-24. It is clear from the allegations in Count II that Taylor knows how to allege a hostile work environment claim and chose not to do so in Count I. Accordingly, the court rejects Taylor's attempt to transform her disparate treatment claim in Count I to a hostile work environment claim under Title VII. Because Taylor states that she is not bringing a disparate treatment claim, summary judgment as to Count I is granted in favor of the defendants.

In any event, because hostile work environment claims brought under Section 1981 are evaluated "under the same rubric as Title VII claims," the same analysis undertaken below would apply even if Taylor had properly brought a Title VII hostile work environment claim in Count I. *Herron v. Daimler Chrysler Corp*., 388 F.3d 293, 299 (7th Cir. 2004); *see also Sublett v. John Wiley & Sons, Inc*., 463 F.3d 731, 736 (7th Cir. 2006) (stating that "'[a]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical'")(quoting *Johnson v. City of Fort Wayne, Ind*., 91 F.3d 922, 940 (7th Cir. 1996)).

B. <u>Hostile Work Environment</u>

In order to establish a hostile work environment, Taylor must demonstrate the existence of the following four factors: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. *Herron*, 388 F.3d at 302 (citation and quotation marks omitted). A hostile work environment must be "'so severe or

pervasive as to alter the conditions of employment and create an abusive working environment.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004)(quoting *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002)). Moreover, the working environment must be "both subjectively and objectively offensive." *Herron*, 388 F.3d at 302. In determining whether a plaintiff has established a hostile work environment, the court must look at "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id*. at 303.

The defendants assert that Taylor has not established that she was subjected to a hostile work environment because she has not demonstrated that the alleged harassment was sufficiently severe or pervasive such that it unreasonably interfered with her work performance.[1] Taylor responds that the following evidence supports her hostile work environment claim:

> [Siddiqui's] failure to replace the terminated black employees with black job applicants, the racial comments made regarding black job applicants, the fact that plaintiff's hours were cut in response to her inquiries regarding black job applicants, . . . , the racial comments directed at plaintiff and her sons, and the attempt to frame plaintiff with a phony lottery theft charge.

Response at 9. In another part of her response, Taylor states that she was:

> subjected to [Siddiqui's] racially offensive language. Plaintiff also had her hours cut in response to her inquire [sic] as to why no black job applicants were being hired. Further, plaintiff had to endure the systematic termination of her fellow black coworkers.

*Id.* at 12.

---

[1]The defendants raise other arguments in support of their motion for summary judgment; however, the court need not address these as it concludes that Taylor has not presented sufficient evidence from which she can proceed to trial on her hostile work environment claim.

As an initial matter, such vague references to "racially offensive language" and "cut hours" are insufficient in and of themselves to rebut the defendants' assertion that Taylor has not demonstrated a hostile work environment. Indeed, Taylor's response is devoid of any citations to either the record or the parties' statements of material fact. Any reference in a party's analysis section of its brief to facts or evidence *must* include a citation to either the movant's statement of facts, the non-movant's statement of additional facts, or the respective responses thereto, if appropriate. Otherwise, how can the court fully and effectively evaluate what the evidence purportedly demonstrates if it does not know precisely what evidence the party is referring to?

This is not a motion to dismiss for failure to state a claim where the court accepts as true all well-pleaded allegations in the plaintiff's complaint. This is summary judgment in which the movant bears the initial burden of establishing that there is no genuinely disputed issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Then, "[b]ecause the purpose of summary judgment is to isolate and dispose of factually unsupported claims," the non-movant must then *present specific facts showing that there is an issue for trial*. *Michael v. St. Joseph County, et al.*, 259 F.3d 842, 845 (7th Cir. 2001) (*quoting* Fed. R. Civ. P. 56(e))(emphasis added).[2] To successfully oppose the motion, the non-movant cannot rest on the pleadings alone, but must designate *specific facts in affidavits, depositions, answers to interrogatories, or admissions that*

---

[2]Indeed, instead of rebutting the defendants' arguments with specific evidence in support of the alleged abusive working environment, Taylor's response relies almost exclusively on her apparent belief that hostile work environment cases must always proceed to trial. *See, e.g.*, Response at 7 ("whether a reasonable person would find plaintiff's work environment hostile or abusive is a factually driven determination inappropriate for summary judgment"). This is simply not the case. In the face of a motion for summary judgment by the defendants, Taylor must point to evidence creating a genuine issue of material fact as to whether her work environment was hostile. As the court determines later in this order, Taylor has failed to meet this burden.

*establish that there is a genuine triable issue.* Celotex, 477 U.S. at 324 (emphasis added). A scintilla of evidence in support of the non-movant's position is insufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. 242 at 248.

Moreover, it is simply not this court's job to sift through the statements of fact and the supporting documentation to find where, if at all, evidence actually exists. The court cannot act as an advocate crafting the parties' arguments for them. If a party would like to make the court aware of a specific fact in support of or in rebuttal to an argument, it should incorporate that fact into the analysis section, *with a specific citation to the statements of fact or the responses thereto.* The court also notes that Taylor's failure to cite to evidence in the record and respond with specific arguments makes it impossible for the movant to prepare a proper reply because the basis of Taylor's argument is unclear. Having elected to discuss only generalizations with no record support, Taylor cannot later complain that the court failed to adequately construct her argument for her.

Nevertheless, in an effort to reach the merits of Taylor's claims, the court searched Taylor's filings in response to the defendants' summary judgment motion. The court has located the following statements of additional fact asserted by Taylor which appear to relate to her claim that the defendants subjected her to a hostile work environment[3]:

> 7. Soon after Mr. Siddiqui took over he started firing black employees for no other reason than that they were black.
>
> . . .

---

[3] The court notes that these statements of additional fact are quoted directly from Taylor's filing and again contain no detail with respect to the general accusations of "racial comments," "undesirable changes," or "phony charges."

> 22. Mr. Siddiqui fired Denise Taylor for no reason other than that she was black.
>
> 23. Plaintiff repeatedly asked Mr. Siddiqui to hire any of the black people who had filled out job applications.
>
> 24. In response to plaintiff's inquiries as to why Mr. Siddiqui had not hired any of the black job applicants, he made several racist stereotype comments regarding the criminal background of black job applicants.
>
> 25. In response to plaintiff's inquiries as to why Mr. Siddiqui had not hired any of the black job applicants, he made several undesirable changes to plaintiff's work schedule, including but not limited to limiting her hours.
>
> 26. In response to plaintiff's inquiries as to why [sic] Mr. Siddiqui attempted to set her up for termination based on a phony charge of lottery theft.
>
> 27. Mr. Siddiqui made several racist comments directed at plaintiff stating that she needed to change her ways.
>
> 28. Mr. Siddiqui made several racist comments directed at plaintiff's sons.
>
> 29. Mr. Siddiqui did not hire a single black employee.
>
> . . .
>
> 32. Mr. Siddiqui also forced plaintiff to sign "written versions of false accusations which caused her to lose her self dignity."

According to Taylor, she began to suffer stress as a result of these events. But, even after making an educated guess as to which of Taylor's statements of additional fact support her claims, these general statements fail to provide sufficient detail from which the court could conclude that a hostile work environment existed. The statements provide no information on the frequency or severity of the alleged racist statements, or what the circumstances of the "phony lottery charge" or the "false accusations" were.

Although Taylor's statements of additional facts do cite to a declaration by Taylor as well as her deposition testimony, neither of these documents, in turn, provides sufficient detail from which a reasonable juror could conclude that Taylor had been subjected to a "hellish" work environment. *Whittaker v. Northern Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005)("[t]he workplace that is actionable is one that is 'hellish'")(citation omitted). As an initial matter, Taylor's declaration provides no detail whatsoever with respect to specific comments that Siddiqui purportedly made to her. Indeed, Taylor's declaration merely mimics, almost word for word, the statements of fact set forth above. As already noted, such vague and non-specific allegations of "racist" comments, "undesirable" changes and "phony" charges fail to demonstrate that the alleged harassment was sufficiently severe or pervasive to create a hostile work environment.

The court therefore turns to Taylor's deposition testimony (and other employees' declarations), which provide some details in certain but not all instances.

*Alleged firing of employees and failure to hire employees based on their race*

For instance, in support of her main contention that she suffered a hostile work environment based on Siddiqui's termination of all of the black employees, *see* statement of fact number 7, Taylor refers to declarations of herself and two other employees, Jacqueline Williams and Lindsey Quirk. Before addressing these declarations, the court notes at the outset that Taylor agrees with the defendants' statement of fact that store managers like Siddiqui did not have the right to fire an employee from the store. Specifically, Taylor admits that if a store manager is dissatisfied with the performance of an employee, the store manager would make a recommendation to the territory manager and then that manager would discuss the situation with

a human resource advisor for a final determination. Thus, Taylor's assertion that Siddiqui fired her and others based on their race is belied by her admission that Siddiqui did not have the right to terminate anyone.

Despite the undisputed fact that Siddiqui lacked authority to terminate employees, Taylor seeks to rely on her own declaration as well as those of two former employees at the Wheeling service station, Williams and Quirk, in support of her contention that Siddiqui fired certain other employees because of their race. The court will address the argument in the interest of completeness. Williams and Quirk's declarations each contain the conclusory statement that Siddiqui was "firing the black employees for no other reason than that they were black." However, Quirk's name was not disclosed by Taylor as an individual likely to have discoverable information under Rule 26(a)(1)(A)(i), and therefore, Exxon moves to have her declaration barred. Fed. R. Civ. P. 37(c)("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion. . . . *unless the failure was substantially justified or harmless*.")(emphasis added). Neither side specifically discusses whether the error was harmless, but Taylor states that she provided documents in which Quirk's name was mentioned a total of seven times and notes that Quirk's name was mentioned thirty times in the plaintiff's deposition. The court need not address whether the fact that Quirk's name appeared or was mentioned in other contexts renders harmless the failure to identify Quirk in her Rule 26(a) disclosures given that, as described below, the court concludes that Quirk's declaration is inadmissible on the ground that her declaration, as well as that of Williams, lacks foundation.

For example, Williams' declaration states that she is an African-American woman, that

she started working at the Wheeling service station in April 2004, that "[a]fter Mr. Siddiqui took over he started firing black employees for no other reason than that they were black", that Siddiqui "also attempted to force black employees to leave", and that Siddiqui "replaced the black employees he fired with employees of his nationality." Williams Declaration, attached as Exhibit 5 to Plaintiff's Appendix. Quirk's declaration is essentially the same. However, neither declaration provides any indication that these employees have personal knowledge of the reasons that the other employees were purportedly fired. Fed. R. Civ. P. 56(e)(affidavits must be based on personal knowledge).

In response to the defendant's motion to strike, Taylor asserts that "[a]n employee in a small workplace such as a gas station has personal knowledge of the conditions of that workplace" and "[i]mplicit in that personal knowledge are factors such as the quality of work being done by co-workers, the attitude of the supervisor towards the employees, etc." Taylor goes on to state that "a co-worker personally knows whether that fellow co-worker [who has been fired] is doing a good job or whether the co-worker deserves to be fired." While the declarants may indeed have personal knowledge about the status of a co-worker's employment or their own beliefs about the quality of work by a co-worker's, they have failed to establish that they have personal knowledge as to why the defendants fired certain employees. Because the declarations contain speculation with no factual basis, they are insufficient to defeat summary judgment. *Witte v. Wisconsin Dept. of Corrections*, 434 F.3d 1031 (7th Cir. 2006)(finding that plaintiff's statement in affidavit that defendant's investigation and disciplinary actions concerned "false and petty allegations" without any reference to evidence was "not the kind of statement on personal knowledge that may properly be considered in an affidavit" and was insufficient to

defeat summary judgment).

Taylor also relies on her own declaration to support her statement that Siddiqui fired black employees for no other reason than that they were black and attempted to force black employees to leave. *See* Taylor declaration, ¶¶ 6-7, attached as Exhibit 1 to Plaintiff's Appendix. Taylor attests that Siddqui fired Robin Beasley, forced Tarlece Beard to leave her job at the station, and fired Joe Meadows on a false theft charge. All of these former employees are black. Again, however, as with the Williams and Quirk declarations, Taylor, a cashier and "clean-up person" at the service station, fails to indicate any basis for her purported personal knowledge of the circumstances of these employees' departures. While personal knowledge may include inferences and opinions drawn from facts, *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991), "the inferences and opinions must be grounded in observation or other first-hand personal experience" and "must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Id.* Taylor's conclusion that Siddiqui fired the other employees because they are black is wholly unsupported by any observations or first-hand personal experience. Accordingly, Taylor cannot rely on these statements in her declaration in order to rebut the defendants' motion for summary judgment.[4]

In sum, because Siddiqui lacked authority to fire employees and, in any event, because Taylor has pointed to no admissible evidence in support of her assertion that Siddiqui fired certain other black employees because they were black, her position that the firing of these other

---

[4]Taylor's deposition testimony that Siddiqui fired certain employees because they were black also fails for the same reason. Moreover, to the extent that Taylor seeks to rely on the declaration of Sandra Brown in support of her contention that Siddiqui fired all of the black employees solely based on their race, Brown's conclusory and unsupported statements cannot be considered for the same reasons identified with respect to Quirk's and Williams' declarations.

employees created a hostile work environment for her fails.

As noted above, the court has identified other additional statements of fact that could support her claim of a hostile work environment. In support of her additional statement of fact number 22, that she was fired because she was black, Taylor's citation to her testimony on pages 108 and 123 of her deposition contains no discussion whatsoever of Taylor being fired because of her race. The deposition testimony Taylor cites in support of her additional statement of fact number 23, that Taylor repeatedly asked Siddiqui to hire any of the black people who had filled out job applications, does not support a claim of harassment *by* Siddiqui. In her additional statement number 24, Taylor contends that Siddiqui made several "racist stereotype" comments about the black applicants' criminal backgrounds. Taylor's deposition includes the following exchange on this topic:

> Q: And when–Who was this that you asked about hiring more minority black women?
> A: Azhar Siddiqui.
> Q: And when did you ask him about that?
> A: I'm not quite sure what month it was in, but we had lost all my other black co-workers, and I noticed that Azhar was hiring a lot of people from the Middle East and a lot of foreigners, and I mentioned it to him because I knew there had been several African-Americans that came in and filled out applications for jobs, and I had asked what happened to them, and I know I was told by Azhar that they had criminal backgrounds and that, you know, they didn't pass the--
> A: The background check?
> Q: The background check, yes, ma'am.

Taylor Dep. at 132-33, Pl. App. 19-20. Taylor went on to state that one black applicant, Tarlece Beard, was rejected purportedly because of her background and that Beard had told Taylor "that can't be true." *Id*. at 135, Pl. App. 20. Taylor further stated that she could not believe that all the black applicants had criminal backgrounds. *Id*. at 134, P. App. 20. Siddiqui's response to

Taylor's inquiry, however, was not, on its face, racist, but simply answered Taylor's questions as to why he was not hiring the black applicants. Taylor does not point to any evidence that Siddiqui's statements regarding the applicants' criminal backgrounds was false.

*Changes to work schedule*

Taylor's next additional statement of fact 25 asserts that Siddiqui made "undesirable" changes to Taylor's schedule when she questioned why he was not hiring the black applicants. Again, however, Taylor's deposition testimony is vague:

> Q: And then after you complained, [Siddiqui] reduced [your] hours.
> A: Yes.
> Q: Is that what you talked about [in your EEOC charge]?
> A: Yes, ma'am.
> Q: And how did he reduce them? Did you used to work like 40 hours a week and now you were only working 30?
> A: Sometime or the schedule changed. It was something I felt in retaliation, yes.

Taylor Dep., Pl. App. 21. Taylor does not identify how many times this purportedly occurred or exactly how many hours her workweek was reduced; thus, her testimony on this topic does not support a finding of severe or pervasive harassment.

*Charge of lottery theft*

In her additional statement of fact number 26, Taylor states that Siddiqui "attempted to set her up for termination based on a phony charge of lottery theft" and cites to her deposition testimony on pages 134, 135 and 227. The only statement by Taylor on pages 134 and 135 regarding the lottery is "[e]ven the fact that he tried to pull something on me about the lottery . . ." This statement is much too vague and nebulous to establish a hostile work environment. The only statement on page 227 (which starts on page 226) is:

> To me, my feelings was [Siddiqui] was going to do whatever he could do to get

> me where he can get me so I can mess up and, bam, he would have had a validated reason, because he first tried to get me by saying, after he fired Sandra, lottery, and then when I said, oh, no, I had no–he left me alone, come to find out he did the same thing to Joe. He was just doing some stuff, yeah.

Taylor Dep., Pl. App. 32. Again, the one word "lottery" with no context or explanation is insufficient to establish a hostile work environment.

*Alleged racist comments*

The same lack of detail regarding the severity or frequency is apparent in the next additional statement of fact, 27, in which Siddiqui allegedly made "racist" comments when he told Taylor she needed to "change her ways". But simply suggesting to an employee that she change her ways is not inherently racist. Indeed, the cited deposition testimony at pages 148 and 149 contains no mention of any racial overtones to Siddiqui's comment that Taylor "change her ways." In any event, telling an employee that she needs to "change her ways," with no additional information as to how often this occurred, does not establish a hostile work environment.

In her additional statement of fact 28, Taylor states that Siddiqui made racist comments regarding her sons. In particular, Taylor stated that:

> [Siddiqui] had mentioned about African-American guys or any guy, but basically African-American, because he met my two sons, when they wear their pants hanging low past their waistline and the big old shirts that these were gangbangers and drug dealers and they should be locked up. He mentioned that to me on two occasions after meeting my kids.

Taylor Dep., Pl. App. 13 at page 102. Then, on page 103, Taylor states that her son told her that Siddiqui "stared him down" and watched him "like a hawk" because he was a young African-American man in his store. *Id*. at 103. As with the other statements, two stray comments about how young men are wearing their pants do not rise to the level of creating a hostile work environment. It is worth noting that Taylor testified that Siddiqui told her that his own son wore

his pants low. *Id*. at 104.

*Purported coercion to sign false statements*

Finally, Taylor contends that Siddiqui forced her to sign "written versions of false accusations which caused her to lose her self dignity." Plaintiff's Additional Statements of Fact, ¶ 32. The following cited pages and the contents of the testimony on those pages is summarized below:

> Pages 66-70: Siddiqui gave Taylor a written warning about clocking in early and clocking out late and Taylor refused to sign it because she says she was not trying to cheat her employer but simply was arriving early as she always did.
>
> Pages 74-79 and 80-84: There is no discussion about signing a document with false accusations until page 79, when Taylor states that Siddiqui required her to write out and sign a statement before she could return to work after she purportedly quit. On pages 81 to 82, the testimony indicates that the written statement indicated, at least in part, that:
>
>> I, Denise, walked out on 4/21/05, not realizing that Azhar [Siddiqui] thought that this meant that I was quitting. But I apologized about my behavior and that I am sorry that this may have upset him or anyone else. I needed to leave because I was very upset. I didn't know if I left I was giving up my job. But I do realize this now. I will not let this happen again.
>
> Taylor also appears to have been required to sign a second statement on April 22, 2005, which said "I, Denise, will clock in and out on time as soon as possible."
>
> Pages 120-21: The only statement that Taylor makes on these pages regarding being forced to write false statements is on page 120 where she says: "You made me sign all this stuff that's not true, write things down."
>
> Pages 152 and 160: These pages contains no discussion of Taylor being forced to sign written versions of false accusations.

Even construing these incidents in a light most favorable to Taylor, the court concludes that they are not sufficiently severe or pervasive such that a reasonable jury could conclude that Taylor's workplace was "hellish." Nor has Taylor demonstrated that any harassing behavior was

Page 18

based on her race. Indeed, the alleged harassing behavior in the instant case is similar to incidents that this court found in a previous case did not establish a hostile work environment:

> According to [the plaintiff], the changes in his job duties coupled with instances of "ridicule, intimidation, embarrassment, and retaliation" created such a hostile work environment that he felt forced to quit in order to preserve "a little dignity." The ridicule and intimidation [the plaintiff] describes for the most part involved difficulties with supervisors, including being questioned about "petty" matters, being scolded for using a wrong form to note an employee's tardiness, and being told in front of coworkers that his input was no longer needed.
>
> While [the plaintiff] may have found his interactions with supervisors unpleasant, he has not described the kind of "hellish" environment that must exist in order to be an actionable hostile environment. *See McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004) (plaintiff must show that she was subjected to harassment so severe or pervasive that it altered the conditions of her employment). Although [the plaintiff's] supervisors allegedly intimidated and scolded him, the boorish behavior he describes was infrequent and spread over the course of many months, amounting to normal workplace friction rather than actionable harassment. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004)(routine difficulties with managers are merely normal workplace friction). Furthermore, [the plaintiff] offered no evidence connecting these occurrences to his race. *See id.* (plaintiff must demonstrate a connection between the employer's conduct and his race). The mere fact that [the plaintiff] is a member of a protected class does not by itself establish that the alleged harassment was based upon his race. *See id.* (the fact that a plaintiff is a member of a protected class does not transform workplace gripes into claims of race discrimination). Without evidence that it was racially based, he cannot establish racial harassment.

Taken individually or together, Taylor's evidence in support of her hostile work environment claim is insufficient to defeat summary judgment.

    C.    <u>Constructive Discharge</u>

Taylor also argues in her response that she was constructively discharged. Actually, she argues first that she was fired but that "assuming arguendo, that plaintiff was not in fact fired, plaintiff has established that she was constructively discharged." Response at 11. The defendants argue that Taylor has forfeited this argument because she raised it for the first time in

her response brief. This court agrees. Even if the court were to consider the merits, however, it would reject the argument because Taylor failed to succeed on her hostile work environment claim, she cannot establish that she was constructively discharged. *Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 463 (7th Cir. 2007)("Because we find that [the plaintiff] was not subject to a hostile work environment, his claim of constructive discharge is automatically foreclosed."). In addition, Taylor's admission that she was fired prevents her from asserting that she was constructively discharged. *Jordan v. City of Gary*, 396 F.3d 837 ("We can make it no plainer than to reiterate that constructive discharge refers to a situation in which an employee is not fired but quits.")(citation and internal quotations omitted).

### IV. Conclusion

For the reasons stated below, Exxon Mobil and Station Operators, Inc.'s motion for summary judgment [44-1] is granted. The defendants' motion to strike [52-1] is granted to the extent discussed herein and the remainder is denied as moot.

**ENTER**:

**DATE**: February 24, 2009

_____
**Blanche M. Manning**
**United States District Judge**